# A. R. Killcrease *et al.* Appellants, *v.* Mary T. Killcrease, Executor, &c.

The probate court has jurisdiction to compel the administrator or executor to return a full inventory.

If the husband reduce the wife's choses in action to possession during coverture, they constitute a part of his estate, and go to his heirs on his death.

If the executor give insufficient security, it is the duty of the probate court to require counter security.

APPEAL from the probate court of the county of Copiah.

In April, 1842, the appellants filed their petition in the probate court of Copiah county, setting forth that they are legatees of William H. Killcrease, who was the husband of the appellee, and died in July, 1838. That said William H., by his will, left all his estate to the appellee during her life, and at her death two-thirds thereof to appellants and one Thomas W. Shelby. That at the August term, 1838, of the probate court, the will was admitted to probate, and letters testamentary granted to appellee and Alexander R. Killcrease, one of appellants. That Mary J. Killcrease, the appellee, entered into bond in the penalty of thirty thousand dollars, with James Speed, Thos. Holliday, and Justin Shaw, as her securities; all of whom are charged to be insolvent. That after said grant of letters, appellee took into her exclusive possession all of said estate, both real and personal, and has ever since retained the same, giving to appellant, A. R. Killcrease, no control of any portion thereof. That at the time of the marriage of appellee with William H. Killcrease, she owned and was in possession of certain negro slaves, the title to which immediately on the marriage vested in William H., who took the same into his possession, and retained it until his death. That appellee received said negroes as distributee of her first husband, Thomas Shelby, upon an informal

division of his estate, in which the other distributees concurred. That at the January term, 1839, of the probate court of Claiborne county, in which county Thomas Shelby resided, the appellee, with a view to defeat the claim of appellants to these negroes, filed her petition for allotment of dower in the estate of her first husband, the said Shelby, whereupon commissioners were duly appointed for that purpose, who allotted to her certain property, (described in petition, page 5, of record.) That appellee has refused to return an inventory of said negroes, which appellants insist are the property of the estate of her second husband, William H. Killcrease, and claims the said negroes as her individual property.

Appellants prayed for a citation against appellee, requiring her to give additional security, and to show cause why she shall not be required to return an inventory of said negroes as part of the estate of William H. Killcrease; and that appellee may be required to answer the petition on oath.

Accompanying the petition was a transcript of the will of William H. Killcrease, and of the various orders of the probate court referred to in petition.

An order was granted for a citation according to the prayer of the petition, returnable to the June term, 1842, of the probate court of Copiah, which was regularly served on appellee.

At the June term of the court, the cause was continued, and at the July term, the appellants moved the court for a *pro confesso* against appellee, and offered to introduce testimony in support of the petition; all which was refused by the court. And on motion of the counsel of appellee, the petition was dismissed. From which decision of the court the appellants appealed.

MAXWELL and COLEMAN, for appellants.

Upon what grounds the order of the court dismissing the petition was predicated, we are utterly unable to conceive. It was filed by legatees against an executrix, whose securities are charged to be insolvent, and who is also charged with having failed to return a correct inventory of the property of her testator to the probate court; and the prayer of the petition is, that additional security may be required of her, and that she be compelled to

amend her inventory by inserting in it the property which she has left out.

The prayer of the petition was certainly a legitimate one. It was made by parties having a deep interest in the estate, the legatees under the will of Killcrease. It was addressed to the tribunal which by the constitution is vested with full, if not exclusive jurisdiction over the subject matter. And it set up facts which, if sustained by proof, rendered the interference of the court a positive duty; and yet without either a written or oral denial of a single allegation in the petition by the executrix, who is thus charged with dereliction, the court in its wisdom not only refuse to allow the petitioners to introduce any testimony to sustain their petition, without condescending to assign a single reason for so novel and arbitrary a course, actually dismiss the petition upon motion of the counsel of the appellee.

To cite authorities for the purpose of showing that the order of the probate court was illegal, and ought to be reversed, would be supererogatory, and by no means complimentary to the intelligence of this tribunal.

The questions both of law and of fact which are presented by the petition, have not been noticed, on the supposition that if the view we have taken of the judgment of the probate court be sustained, they will form more legitimate subjects of examination and discussion before that forum.

THRASHER for appellee.

The bill of exceptions embodies the only points relied upon by the appellants, to reverse the decree of the probate court, in dismissing the petition. The first question, therefore, for the consideration of the court is, was the defendant compelled to answer the petition, or was it the duty of the court to render a judgment of *pro confesso* on the petition?

By the 7th section, page 29, of the Revised Code, it is declared, that whenever either of the parties having a contest in the orphans' court shall require, the said court may direct a plenary proceeding by bill or petition, to which there shall be an answer. It will be perceived that there was no order or direction of the court that such proceedings should be had. Then, if such an order

was not necessary, the *pro confesso* could not be taken until after an attachment had issued, according to the 7th section of the above recited act. No order having been made, it is presumed that the probate judge deemed it unnecessary.

2. Was the petition such as to have rendered it the duty of the court to order it answered? An inventory had been returned by the executrix, and the slaves mentioned in the petition were not included in the inventory. But by the showing in the petition, there is a grave controversy respecting the title of those mentioned in the petition. The executrix claims them as survivor of a former husband, and the probate court has no power to try titles. The question of title between the parties belongs to another and a different tribunal. There is no statute authorizing the settlement of such controversies by the probate court. A suit on the bond of the executrix is the only remedy. Toller's Law of Executors, 252; Selectmen of Boston *v.* Boylston, 4 Mass. Rep. 321 ; Henshaw *v.* Blood *et al.*, 1 Mass. Rep. 42.

3. Did the court err in refusing to require additional security? Whether the security was or was not sufficient was a matter resting in the sound discretion of the probate court. New security is not to be given merely because a party interested in the case requires it. The court is to judge of the sufficiency or insufficiency of the security; and in the case before the court the judge believed the security abundantly sufficient and dismissed the petition. The appellate court has no means of judging of the sufficiency of the security, and it being a matter within the discretion of the probate court, cannot constitute error. The act gives the right to any person interested in the distribution of the estate. Revised Code, p. 46, sec. 64.

By the will of William H. Killcrease, Mrs. Killcrease has the whole estate for life. Of what benefit, then, could a bond be to the petitioners? She is not charged with wasting the estate. The petitioner's right to the slaves mentioned in the petition could not be better secured by any bond that the judge of probate could take. Can the probate court require a bond to secure the execution of the will after the death of the executrix? Certainly not. What is the duty of the executrix? To pay the debts, funeral expenses and legacies. Suppose a third person had been the lega-

tee, instead of the executrix, what would have been her duty under the will? The answer is plain: to have paid the debts and then to have delivered the property over to the legatee. This done, the will would have been executed, and the special condition of the bond fully performed. Is the rule a different one, because the executrix is legatee? It is thought not. If the property be removed beyond the limits of the state, the life estate is at an end by the statute.

It is hard to perceive in what way the petitioners are interested in the distribution of the estate, at least until after the death of Mrs. Killcrease. After the death of Mrs. Killcrease, and not until then, the right of the petitioners, if any, commences. The petitioners had no right to require additional security. If the rights of the petitioners are endangered, their remedy, if any they have, is in another tribunal. But they do not pretend that the executrix is wasting the estate or using it in a manner calculated to destroy the remainder, if there is a remainder after the life estate, in those slaves mentioned in the petition.

Mr. Justice CLAYTON delivered the opinion of the court.

This was a petition filed in the probate court of Claiborne county, by the appellants, requiring the appellee, as executrix, to file an additional inventory of the estate of her testator, and to give other and better security. The property sought to be made the subject of a further inventory consists of several slaves, which had belonged to Thomas Shelby, the first husband of the appellee. The petition states that these slaves had been in her possession for many years before her marriage with her last husband Killcrease, and were claimed by her, as her distributive share of the personal estate of her first husband. It also states that they had been in the actual possession of Killcrease from his marriage until his death, and that they constituted a part of his estate. His will is also set out, in which all his estate is given to his wife during her life, and one third of it to be at her disposal in fee simple; the other two thirds at her death are to go to the appellants. Shelby, the first husband, died in 1829, and after the death of her second husband in 1839, the appellee upon her petition had the slaves in dispute set apart to her as her distributive share of the estate of

her first husband. This is charged to have been done to defeat the claim of the petitioners. It is also charged that no sale of the personal estate of Shelby was ever made; that these slaves were claimed and held by her as her portion from 1829, and that her possession and claim were concurred in by the other distributees of Shelby.

The petition was neither answered nor demurred to, but was dismissed by the court upon the motion of the defendant; and the case comes up by appeal from this order.

It is insisted by the counsel for the appellee, that this order was correct, because the way to compel a full inventory was by action upon the bond of the executrix. We think that this is too narrow a view of the subject; no doubt an action for the purpose might be sustained upon the bond, but we think the probate court likewise has jurisdiction in the matter, and power to compel a full inventory to be filed. If this is not the case, its jurisdiction in regard to the estates of decedents, which was intended by the constitution to be full and ample, and almost exclusive, will be far too confined to answer its ends and object.

This point disposed of, the question next arises, whether the slaves in dispute formed a part of the estate of Killcrease, and should be included in the inventory. We must regard the statements contained in the petition to be true, and consider the case as if it stood upon demurrer. The respective rights of the husband and wife, as the one or the other may survive, have been very fully considered and declared by this court at its present term in the case of Wade *v.* Grimes. By the principles there laid down, the rights of the wife to her personalty are at an end, when the property is reduced to possession by the husband during coverture, and the title becomes absolute in him. In this case the petition charges that the slaves in question were claimed by the appellee as her own, soon after the death of her first husband, and that her claim was concurred in by the other distributees of Shelby; that from the time of her second marriage they were claimed by Killcrease, and possessed by him as his own, until his death, and that they then constituted a part of his estate. If these things are so, and in the present state of the case we must consider them as admitted, these slaves form a part of the estate of Killcrease, and

A. R. Killcrease *et al.* Appellants, *v.* Mary T. Killcrease, Executrix, &c.

should be included in the inventory.   This is certainly correct as to the parties before the court.   The only other persons whose rights might be involved, are the other distributees of Shelby, and as they are not parties to this proceeding, they cannot be affected by it.

If the security given by the executrix was insufficient, it was the duty of the probate court to require her to give other that is good.   How. & Hutch. 398, sec. 45.

The order will be reversed, and the case remanded, to be proceeded in according to the principles herein laid down; with leave to the appellee to answer, if she desires so to do.

Decree reversed.